OK, the next task. OK, this is the second appeal from an enforcement proceeding brought at the request of Fuji Photo Film against Basfin Camera Company and other respondents to the ITC. The first appeal that was brought before this court was for the Commission's failure to hear Basfin's defense of invalidity under the contention that the ITC was not required to consider such invalidity defenses in an enforcement proceeding. This court disagreed, reversed, and remanded to have the International Trade Commission consider the invalidity defenses on appeal. On the remand, we presented evidence in the form of two prior references primarily that anticipate Claim 15 of the 087 patent. This is the only claim that Basfin's cameras have been found to infringe. The claim is invalid and the International Trade Commission legally erred in failing to find that. In the proceedings below and on this appeal, the Trade Commission relies on the preamble as the basis of a limitation to avoid invalidation by the prior art. Simply put, the preamble in this case is not a limitation. It's merely a label. It says a lens-fitted film package comprising and then proceeds to recite the structure that describes a complete invention. There's no reliance on the preamble for antecedent basis. There's no reliance on the preamble during the prosecution to obtain allowance. So the Commission, in the underlying case and on appeal, turns to the catch-all that otherwise breathes life into the claim. But this court has made clear in claiming that the breathed-life standard is really more of a label than the conclusion, and the real test is, does the preamble add something structural necessary to the claim to make it complete? In this case, that's not the case. One skill in the art of reading this claim, it's a very straightforward claim describing the simple construction of components of a camera and conveying what is really the critical feature, is the idea that there's a roll of film that's outside of the 35mm cassette, enabling the user, as he takes pictures, to wind it into the cassette as he takes pictures so that when he's done, all the film is inside. All the structure necessary for that is in the body of the claim. It does not depend on this preamble label, lens-fitted film package, in order to express that combination. Vast fame is always maintained that the preamble is not a limitation, and if the court agrees, that really ends the inquiry, because all the elements in the body of the claim, I don't believe there's any dispute, are found in both of the prior art references. Now, in the underlying remand, are inquiries... So that I can understand the setting of this case, we've had so many of these so-called disposable cameras, I have to be careful with the use of terms, we get in trouble, but these are expensive cameras. The reason I take it that 15 is the only claim of this patent that would be infringed, it is that the camera has to be destroyed in order to unload it, isn't that right? It must be destroyed to open the same, that appears in all the other 14 claims either... Of that particular patent, yes, sure. So I take it that the two cameras that are at issue here can be opened without destroying the camera, and therefore would be subject, at least conceivably, to being reused? That's correct. And that came up in one of the earlier cases? It did indeed. Okay. And particularly the VASFANE cameras at issue here have a hinged back that is released like a conventional camera, and they have a spool with a hand crank so the consumer can actually wind the film out and use it a second, third, fourth time, etc. Okay. And I think Fuji recognized that, and that's why we don't have those claims at issue here. The inquiry didn't end there on remand, we went to one level deeper and we said, okay, well, in order to analyze this label, lens-fitted film package, to determine does it contribute any structure to the claim, we need to have a definition of it. Interestingly and importantly, the specification does not provide a definition of lens-fitted film package. The word is used throughout this fact that there's no definition given to it. So if the parties agreed to, as an analytical tool, as a working definition, they would utilize the definition given by the administrative law judge in the very original proceedings back in 1998. What do you do, if I can interrupt you again, I'm sorry, what do you do with the language that appears that claim one lines, oh, it looks like 16 through 21, this lens-fitted photographic film package comprises a film casing fitted with a taking lens, a simple exposure mechanism, which includes a film-winding mechanism and a shutter mechanism with their associated elements, da-da-da. That has a definitional sound to it. I'm sorry, Your Honor, what was the column? I'm sorry, column one, line 16 or 15, it looks like, to 21 or so. Okay, this is describing a lens-fitted film package of the prior art, and it's giving a general description that one skilled neuroethic would already understand, that as a camera, it's going to have a taking lens, an exposure mechanism, a film-winding mechanism, and a shutter mechanism, and their associated elements. So it's introducing the reader to just sort of the inherent structures that are going to be found really in any camera, and I don't think that those are unique. Any LFFP, presumably, because it starts off by saying this is, or at least you could read it to say this is what an LFFP consists of. Okay, and perhaps it does, but if it does, those are things that it shares in common with any camera. Those are not features that are unique to an LFFP. So in that regard, and particularly in view of the fact that it's in the background of the invention, I would not regard it as definitional for purposes of the meaning of the word. So you're really telling us that we should read the claim as if it's not part of this specification, which is certainly directed to this particular structure. Yeah, we absolutely should, Your Honor, but I don't think that there's... That's quite a novel theory of claim construction, is it not? After all we've been through about the claims being part of the specification and read in light of the specification? Correct. You think nevertheless we should depart from all that's been achieved in claim construction and start again? We should not, Your Honor. We should not depart from that. We should read it in light of the specification, but I think this Court has a body of law on how much the definitional limitation is incorporated from the specification. It is incorporated, but you're saying if it's the first sentence it doesn't count. I'm saying that it should be borne in mind that it's in the background section. But in any event, even if those features that are pointed out in Column 1 are regarded as being part of the claim by virtue of the once-in-a-lifetime package... No need, Column 1. Look at the claim. You don't even have to go to the specification. Those words are repeated. You just say we don't include them because they're in the preamble? Well, Your Honor, the taking line certainly is in the film casing, but other things such as the exposure mechanism, the winding mechanism, the shutter mechanism... What about the first line of the claim? You mean by use of that title? A lens-fitted photographic film package. Correct. It's preambulatory. The question is whether that wood structure is incorporated by virtue of that preamble is necessary to add to the body of the claim in order to have a complete invention. In any event, if those aspects in Column 1 are incorporated, those are still inherent in any camera and are found in the prior art. That's not the basis of distinction of the claim that avoids invalidity under the prior art, and it's not what the Commission has relied upon. What the Commission has relied upon, and it's a very good point, Your Honor, because those are structural things that you are pointing to, and if the Court determines that those structural elements that are common to cameras are part of the definition of lens-fitted film packaging 15, that may indeed be part of the combination that's required by Claim 15. But what is not listed there, and what the Commission is attempting to bring into the relatively inexpensive, and the requirement that's not even in the working definition that this arrangement of the film has to be done at a factory. The relatively inexpensive, I don't think there's any dispute. Fujii's counsel and expert has agreed that that is a subjective term, and I think the Court made it very clear under Allen Engineering v. Bartel that such subjective, relative terms that do not have a frame of reference in the specification cannot form the basis of a limitation to the claim. What about the frame of reference to the extent that it provides some guidance, at least, that the cost has to be roughly, or put it this way, not substantially in excess of the cost of a roll of film, the cost of the entire package? Well, the only source that I'm aware of that theory is from Fujii's expert. The one skill in the art of reading this patent is to obtain from the public this and get that. The specification doesn't describe that. Now, Fujii's expert may glean that in a litigation context, but I don't believe that one skill in the art of reading this without that hint from him would come to that conclusion. And even if that was a standard that was suggested by the spec, from a definite standpoint, where do you draw the line? How much more than the cost of a roll of film is expensive, and therefore not infringing, versus inexpensive? Quickly, because I'm into my rebuttal time, I would just say that the second element of out-of-factory is not a limitation. It would be, at best, a method step of who, when, and how. And in the context of an apparatus claim, such a method step should not be considered in analyzing invalidity under N. Ray Thorpe, which I think, Your Honor, is the author of. And so we would say that if those two limitations are excluded, then all the other elements of the claim are found, and the claim should be invalidated. This Court should, therefore, reverse and remand, not for further proceedings, but with an instruction for the Commission to finally, after these five years and two appeals, enter a determination that it's invalid. Thank you. Okay. Thank you, Mr. Bain. Mr. Englert? May it please the Court, Jonathan Englert for the International Trade Commission. Our brief sets out the basis for our view that the Commission correctly rejected Vastam's argument that Claim 15, Fuji's 8-7 patent, was invalid, and I'll not repeat those arguments at length here. I'd like, however, to emphasize a few points, particularly in light of what we've just heard. With respect to the question of whether the preamble's reference to a lens-fitted photographic film package is a claim limitation, this Court has consistently found that the preamble should be considered a substantive claim limitation if it recites essential structure or steps, or if it's necessary to give life, meaning, or vitality to the claim. And to make that determination, it's necessary to examine the entire patent record to determine what invention the patentee intended to define. Vastam's argument that the body of Claim 15 should be read in a vacuum, outside of the context of an LFFP, if it's disclosed in the preamble, finds no support in the 8-7 patent taken as a whole. Here, the specification makes clear that the inventors were working on a problem relating to LFFPs, not general cameras. The specifications of the 8-7 patent discuss in great detail the nature of LFFPs, and on the basis of that specification, the ALJ arrives at this uncontroverted definition of the LFFP in the original enforcement proceeding, which is that of a relatively inexpensive disposable camera, which are preloaded with film, and a film cartridge, so that after use, all the film has been advanced into the film cartridge. Now, disposable struck me as a word which got tortured a bit in the process of all of this, because we clearly don't mean it's one use only. Otherwise, I gather the two cameras at issue in this case would not necessarily satisfy that requirement. Is that correct? Well, that is correct. The term disposable, as the ALJ constituted, it lent itself to being disposed. That seems to me just not very helpful. The words I think that the ALJ used are something like available for disposal, or something like that. You can say that of a lot of products these days. I remember you came here during the rain on the subway, but if you stand outside the subway, and the people are handing out umbrellas and charging $4 for them, those will last a couple of trips on the subway and not much more. Are they disposable? Your Honor, I beg your pardon. I'm just not sure what disposable means in the context in which you mean something other than one use only. Your Honor, I think if one looks to the specification, that there is additional guidance there that helps lend a bit more light to what disposable means in this context. It comes up in the context of the relative cost of these devices. For instance, the specification makes clear that the film package without the film is subsequently scrapped by the processor. You find that at page A595 of the appendix in the specification, and that these devices are to be assembled at low cost, and that they can be sold anywhere photographic film is sold. Again, these points go more towards the relatively inexpensive nature of them, but they cast some light to one or several people's experience in the art of what disposable would mean in this context. The distinction, and again, we're blending a few concepts here, but for instance, if we talk about the anticipation arguments that have been raised by Vashtang as to some of the other cameras in the prior writings, SHR-53 and 48 patents, that those cameras were more traditional cameras, which contemplated multiple use. When ALJ discussed those cameras, there was discussion also in the testimony as to the physical characteristics of these non-disposable cameras. I didn't read anything in those two pieces of prior art that suggested that they necessarily were the more expensive cameras. Simply, there was an absence of suggestion that they were disposable or inexpensive. Is that a fair statement? That is a fair statement. That's why I mentioned it was in the context of anticipation. It's trying to turn some way to help to clarify the meaning of disposable in this context. It suggests that it perhaps isn't as unclear as all that. Let me ask the question this way, and then I'll leave at this point. Do you think the term disposable adds anything to the term inexpensive as used in this claim construction? The term disposable read alongside the term inexpensive, and particularly given the context that the specification provides as to the meaning of the term inexpensive as construed by the ALJ. I think it does add some meaning because it suggests that in addition to the fact that the camera itself is typically scrapped by the processor, the term disposable suggests that the scrapping is a permanent event. Perhaps one way of saying it is in addition to the notion that the camera can't cost a whole lot more than the film. Precisely. To that, and coming back briefly then, a few more comments about this issue of the preamble and the limitation to Claim 15. The ALJ found that without the preamble to Claim 15, and its limiting reference to LFPs, that Claim 15 does not by itself describe a structurally complete device because it doesn't mention, for instance, a shutter, a lens, a frame counter, or other fundamental elements of the camera. This goes somewhat to Judge Newman's comments earlier about the opening paragraph of the specification, in which those features are in fact, when one looks to the specification, the significance of those elements is expressly laid out in the detailed description of the invention as it describes what an element constitutes. So all of these elements taken together are part of the way that the specification defines an LFP. Consequently, ultimately, this goes to the importance of reading the preamble to Claim 15 and its reference to LFPs as a claim limitation to Claim 15. I'd like to turn to two issues raised, and I don't want to, by the way, I'm concerned about running into time at the end. It's up to you how you share the time. So I'm going to only skip to two quick points then. One is this issue of preloading at the factory. There's significant support in the record and in the specification for this notion that these cameras are to be delivered with film preloaded in the factory, not by a user. And the specification makes clear that this loading is to take place in a dark room with the aid of a film-loading jig, referring that the film cannot be removed by the user. All of these discussions of preloading all relate to steps that would not typically be done by a user. One wouldn't expect a typical user of a camera to have a loading jig in a dark room in order to load these cameras. And finally, these issues of indefiniteness, which have been raised, intending that the term inexpensive is in some sense indefinite. The ALJ has consistently defined throughout this proceeding that these cameras are relatively inexpensive disposable cameras. This was the definition in the initial enforcement determination. And the vast same did not dispute this definition of an LL50. And there is no arguments about indefiniteness at that time, in our view, to have waived this argument. If there's no further questions, I'd like to... Okay. Thank you. Mr. Siegel? Good afternoon, Your Honors. I think that what's happening here is that what Vastain is arguing for is that after we have a Markman-type hearing, after we interpret the claim, and you just heard Mr. Bain admit that Vastain, the ITC, Fuji, everyone agrees on how we're going to interpret this phrase, lens-fitted film package, as meaning a relatively inexpensive, disposable, preloaded, et cetera, that after we interpret the claim, we then have another hearing, and we have another legal determination of what the interpretation means. And that's just simply not the case. If that were the case, then after the court, in the Corning case, found that optical waveguide was a positive claim limitation, and then spent about a page giving various definitions of what optical waveguide meant, then we would have another legal discussion, and we would analyze each aspect of the interpretation and see where that goes. The claim says lens-fitted film package. The claim doesn't say a camera comprising, and it doesn't say a relatively inexpensive, disposable, preloaded, et cetera, comprising. The claim says a lens-fitted film package. And there's no argument that I can find at one of ordinary skill in the art, and that's who these arguments are supposed to be directed to, whether one of ordinary skill in the art can't look at something and say, this is not an LFFP, or this is an LFFP. And at the time that the Show 48 and Show 53 references were published, there was no such thing as a disposable camera. So the fact that they didn't mention anything about disposability, and they don't teach you any way of how to make a disposable camera, the only reasonable conclusion is that they're talking about a conventional camera. And I use conventional in the sense that one of ordinary skill in the art can tell the difference between those cameras and a lens-fitted film package. The other issue that I'd like to... But I don't know how frequently one encounters these in the market, but presumably there are at least two in which you can, and I don't, again, know the extent to which people as a practical matter do reload them, but there are at least two cameras we know in this case that you can reload. Well, I would take exception to that, Your Honor. They are theoretically reloadable because the back opens. I don't believe there is any evidence in the record of a single consumer reloading film into the two BASFAM cameras at issue. There's just no evidence at all as to those two cameras, whether any consumer is reloading them. I believe that there was testimony by our expert that any consumer would be substantially frustrated, and I personally don't believe that these cameras are reloadable, although you can open up the back, and with a lot of practice and training, perhaps you can reload them some of the time. The other issue that I'd like to get to, because in BASFAM's reply they said, you don't need expert testimony to determine whether the Show 48 and Show 53 references contain all the elements of the body of the claim, and I take particular exception to that because this Court has said that you don't interpret the prior art and compare the prior art to the claims based on what's apparent to an attorney, but to one of ordinary skill in the art, and both experts in this case came to the conclusion that neither reference discloses an end of the film spool extending outside of the lifetime case, and we cited to the appendix portions where Fuji's expert, Mr. Bellows, and BASFAM's expert, Mr. Weaver, say that the film spool would likely be linked to a knob that's on the top of the camera through some sort of a gearing system, and part of that testimony could be a little difficult to get to the papers, so I have blow-ups of the two cameras at issue, and what they're saying is that if we first look at the right side... Are you wearing the microphone? ...that if we first look at the right side of the camera, which in this sense is the conventional side before the supposed invention, where we have a thumb lever, that you would expect the thumb lever to be some sort of a ratcheting mechanism. It doesn't just spin around and spin the cartridge. Some ratcheting mechanism with a gear system down to this cartridge and a linkage to this pocket wheel so that the film is metered a particular length each time the ratchet is moved back and then returns on its own, and what they said is, well, okay, that's the normal type. In this supposed invention, you're doing something new on this side. You would likewise expect this knob here to be coupled to this spool on the left side by some sort of a linkage, some sort of a gearing system. You wouldn't expect this to just extend straight through. They were consistent when it came to the Show 48 reference. They said, again, on the right side, there's no way that this could even be accurate. This thumb lever doesn't get spun around, although it's shown with a rod going straight through a film cartridge. Film cartridges aren't made that way. They're not hollow. So what's being shown here is not what one of ordinary skill in the art would interpret. One of ordinary skill in the art would interpret that this is just a schematic, that really there's supposed to be some sort of a gear linkage here, that there would be a gear linkage to this pocket wheel, and that one of ordinary skill in the art would likewise understand that on the right side, the same sort of schematic is being shown, but they would expect, again, some sort of a linkage. Mr. Weaver talks about a white baffle, where you would have some sort of a gearing system. He also says a cog system. I think it means the same thing, to transmit the rotation from the crank on the top to this film spool on the bottom. I think I'm out of time. Okay. Thank you, Mr. Siegel. Mr. Bain? Yes. I believe, in follow-up to Judge Bryson's question, that in this working definition that the ALJ came up with, it was not a legal claim construction. It was a working introductory definition in 1998, and as an analytical tool for the first time on remand, that thing agreed to use it as a working tool, but not conceding that every single word, every adjective was a limitation, that the words disposable and inexpensive really are synonymous and somewhat redundant, because they both turn on the same thing, economic decision of the consumer. One consumer may regard a $6 camera as something he's willing to part with, whereas another consumer may regard that as something he wants to reuse. That type of economic line drawing cannot be the distinction of patentability or the distinction of claim coverage in an apparatus claim. Again, this is costing slightly more than the cost of the film. I look at the history of Fuji cameras themselves. In the early 90s, when they were introduced, they were the premium product. They were charging $12, whereas a roll of film could be bought for much less than that. As time went on through competition, the price point came closer together. Again, economic decisions cannot drive the scope of an apparatus claim. The commission argues that preload is supported by the specification and points to all the discussions of methods of loading. That disclosure supports what was ultimately a divisional application for methods of loading. Once again, we're talking about an apparatus claim, and that's an improper attempt to incorporate a method limitation from the specification into the apparatus. The final thing I'd like to point out is that, again, this is a very simple claim, and as it can be seen, it was by the show 48. Clearly to the eye and clearly in the corresponding description, the shaft 6 is directly connected to the hand crank 7. In connection with the infringement, the underlying infringement action, Fuji and the commission have been emphasizing throughout that the same claim construction that's used for infringement should be used for invalidity. They found that cameras that had a hand crank that was directly connected to a shaft met claim 15. Now when we find the exact same structure in the prior arc, they want the standard to change. The experts did not say that this does not teach one skill in the art a direct connection between 6 and 7. The experts gave testimony that based on their design experience, they may want to have some gear reduction or some other type of improvement, but that doesn't take away from the fact that the disclosure reveals to one skill in the art a direct connection as seen right here to our eyes of the shaft 6 to the hand crank 7. In order for that shaft 6 to get to the external hand crank 7, it has to have an exposed end that comes outside of the light tight region, otherwise it would not be a mechanical junction. If a disclosure expressly shows something, but to the eye of one skill in the art, he says, well, I see that idea, but I can make it better, that doesn't take away anticipation. It still discloses the direct connection. So it's really a distraction to say, well, the experts would prefer it to be a gear reduction or some more complicated system. That doesn't take away the disclosure that show 48 shows, and then of course show 50 shows a winding knob instead of a hand crank. One other point of clarification I'd like to make is that when show 48 and show 53 came out in the 1970s, the disposable cameras did exist. It's in the record of the Netherlands patent in 1968. A reading of that makes it very clear that that was one of the pioneering patents of the idea of a disposable camera. So to say that it came out for the first time with Fuji's patent in the 1980s is not correct. It should be reversed and remanded with instructions to invalidate. Thank you. Thank you, Mr. Bain, Mr. Ingrid, Mr. Siegel. Case is taken under submission. Case is taken under submission. Case is taken under submission. Case is taken under submission. Case is taken under submission. Case is taken under submission.